
Case 2:10-cv-00003-MCE-AC   Document 96   Filed 11/01/13   Page 1 of 8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVETTE DANIELS, MARIA AGUILAR and KAREN CURRIE, individually and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>Defendant. | No. 2:10-cv-00003-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

Through the present action, Plaintiffs, who all worked for Defendant California Department of Corrections and Rehabilitation ("CDCR") allege they were subjected to a hostile work environment by their employer. Plaintiffs attribute that environment to the CDCR's alleged failure to properly enforce policies prohibiting the possession and display of sexual materials. According to Plaintiffs, the CDCR's failure in that regard violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. All three Plaintiffs assert claims for gender discrimination premised on the alleged hostile work environment. That is the only claim being presented by Plaintiff Karen Currie.

///

The CDCR now moves for summary judgment as to Ms. Currie's complaint on grounds that she failed to exhaust the requisite administrative claims before filing the instant lawsuit.  Alternatively, the CDCR also argues that even if Ms. Currie's claims were properly exhausted, they still do not satisfy the essential elements of a hostile work environment claim.   In addition, the CDCR further contends that because it took action to prevent and deter the harassment, it cannot be liable in any event.  As set forth below, the CDCR's motion is granted.

**BACKGROUND**

Plaintiff Currie worked for CDCR as a correctional officer from 1984 until her retirement in December of 2010, with a five-year hiatus in that employment between 1989 and 1994.  Def.'s Undisputed Fact ("UF") Nos. 3, 5.  Plaintiff was assigned to the Corcoran State Prison between 1994 and the time she retired in 2010.  Id. at No. 6. While working in the Level I dorm during 2008, Plaintiff testified that on approximately five occasions, she had to take action against inmates who displayed sexually suggestive photographs and/or magazines in contravention of CDCR policy governing the possession and/or display of such materials.[1]  Four of those instances were remedied through verbal counseling, while the fifth resulted in a Rules Violation report after the inmate persisted in displaying photos despite being verbally counseled on two separate occasions.  See id. at Nos. 21-43.  According to Plaintiff, she moved to the 3-B gym after working only a couple of months in the Level 1 dormitory during 2008.  Id. at No. 51.  She denied being exposed to any sexually explicit materials after that transfer. Id. at No. 54.

---

[1] Plaintiff's Declaration appears to be at odds with her deposition testimony in reciting additional documented violations, as well as "more verbal warnings than [she] can remember."  Currie Decl., ¶¶ 9-10. As discussed below, while the Court should disregard declarations that contravene previously sworn testimony (see Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996), this discrepancy does not alter the ultimate disposition of this Motion since this matter turns on whether Plaintiff exhausted her administrative remedies as a precondition to suit.

2

Under Department policy, while possession of sexually suggestive materials is not prohibited, inmates nonetheless cannot openly display such materials. Id. at Nos. 11, 13. All material deemed sexually explicit as opposed to simply suggestive, on the other hand (whether contained in photographs, magazines, or video), is deemed contraband and is subject to confiscation by correctional officers along with associated discipline against inmates who are found to possess such material. Id. at Nos. 7, 9.

This lawsuit was originally instituted as a class action in 2010. It is undisputed that Ms. Currie's two co-plaintiffs, Yvette Daniels and Maria Aguilar, exhausted their administrative remedies prior to suit. Once the class action allegations were dropped from this matter in 2011, its prosecution was left to the named Plaintiffs on their own behalf. According to the CDCR, not only is Plaintiff's complaint silent on any exhaustion by Karen Currie, but discovery has also revealed no evidence that she pursued any administrative remedies. As indicated above, Defendant's initial argument here is that Plaintiff Currie cannot maintain this lawsuit in the absence of the required exhaustion. Defendant accordingly contends it is entitled to summary judgment.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp., 477 U.S. at 325.

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.

///

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).

The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

Before instituting any suit under Title VII, a plaintiff must exhaust his or her administrative remedies by filing a timely discrimination charge either with the Equal Employment Opportunity Commission ("EEOC") or with an appropriate state agency like the California Department of Fair Employment and Housing ("DFEH"). Obtaining a so-called "right to sue" letter from one of those agencies is a prerequisite to resorting to court action. 42 U.S.C. § 2000e-5(f)(1); Freeman v. Oakland Unified School Dist., 291 F.3d 632, 636 (9th Cir. 2002). Title VII requires that the initial administrative charge be filed with the EEOC within either 180 or 300 days following the alleged unlawful employment practice. In the present matter, the applicable limitation period is 300 days because of a work sharing agreement between the EEOC and the DFEH. Flores v. Merced Irr. Dist., 758 F. Supp. 2d 986, 993 (E.D. Cal. 2010).

As indicated above, there are no allegations in the Complaint that Plaintiff Currie satisfied the mandatory exhaustion requirement. Defendants' own investigation revealed no record of any complaint filed by Ms. Currie against the DFEH. While the EEOC does show two complaints having been filed by Ms. Currie, neither of those complaints alleges that Plaintiff was subjected to a hostile work environment due to inmates' possession or display of sexual materials, and consequently neither complaint appears germane to this lawsuit.

See Decl. of Amy Lindsey-Doyle, ¶¶ 4-5, Exs. C and D thereto.[2]  While Ms. Currie does claim in her Declaration to have filed "multiple complaints" with both the DFEH and the EEOC for the "hostile work environment" she experienced while employed at CDCR, she offers no specifics and attaches no documentation attesting to those alleged complaints. Currie Decl., ¶ 24.

Plaintiff Currie all but concedes that any prior agency complaint did not relate to her current allegations by stating only that "prior to the filing of this lawsuit, both [of] her co-plaintiffs exhausted their administrative remedies by filing a Charge of Discrimination with the Equal Employment Opportunity Commission." Pl.'s Opp., 3:9-10.  Then, in discussing how that exhaustion applies to her, Plaintiff argues only that she was entitled to "piggyback" on those charges.  No reference is made in Plaintiff's opposition itself to any exhaustion by virtue of Plaintiff's own agency complaints.

Plaintiff is correct in asserting that courts do recognize an exception to the individual filing rule in multiple-plaintiff, non-class actions.  In such suits, where one plaintiff has filed a timely agency complaint, co-plaintiffs with "individual claims arising out of similar discriminatory treatment in the same time frame" need not also file what would amount to virtually identical complaints. U.S. Equal Employment Opportunity Comm'n v. NCL America Inc., 504 F. Supp. 2d 1008, 1011 (D. Haw. 2007) ("EEOC v. NCL").  That exception, as claimed by Plaintiff herein, is known alternatively as "piggybacking" or the "single filing rule." Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1197 (10th Cir. 2004).  In Harris v. County of Orange, 682 F.3d 1126, 1136 (9th Cir. 2012) the Ninth Circuit recognized the ability of one plaintiff to "piggyback" on another's administrative claim under appropriate circumstances.   As the Harris court explained, "it would be duplicative and wasteful for complainants with similar grievances to have to file identical notices of intent to sue with a governmental agency. Id. (emphasis added).

///

---

[2] The two EEOC complaints that defense counsel did obtain related to unwelcome sexual comments, statements, conduct and gestures and contain no reference to the sexually suggestive and/or explicit materials possessed by inmates that are at issue herein. Id.

6

Cases where so-called "piggybacking" has been permitted emphasize the fact that the claims at issue are virtually the same, with notice of one administrative claim thereby sufficient to place the allegedly offending entity on notice of all remaining claims. See EEOC v. NCL, 504 F. Supp. 2d at 1010 ("it…appears undisputed that all Plaintiffs-Intervenors are making essentially the same claim of unlawful discrimination" with the terminations occurring "under the same or very similar circumstances on the same day"); Harris v. County of Orange, 682 F.3d at 1136 (effect of group health care plan charges made by County on its retired employees, with the same claims being applicable to all retirees).  Notice is key since "[t]he purpose of administrative charge-filing requirements is namely to give notice to the charged party." Dukes v. Wal-Mart Stores, 2002 WL 32769185 at *1 (N.D. Cal. 2002)

Here, there is no indication that notice of one plaintiff's action served as notice of other identical claims, such that requiring all "[plaintiffs to exhaust their remedies, when others in the class had already done so, would serve no useful purpose." Harris v. County of Orange, 682 F.3d at 1137.  Karen Currie worked as correctional officer in Corcoran State Prison in Corcoran, California, and complains of a hostile work environment that transpired primarily, if not exclusively, in 2008.  Currie's co-plaintiffs, on the other hand, complain of incidents that occurred in different places at different times. Yvette Daniels was a counselor at a youth facility located in Stockton, California, and identifies events that occurred; for the most part, in 2007.  The third named Plaintiff, Maria Aguilar, was a correctional officer at the state medical facility in Vacaville and alleges being subjected to sexually offensive materials during a time frame extending from 2005 to 2008.  As is readily apparent, the claims of all three plaintiffs involve completely different correctional facilities, of different types, in different areas within California.[3]  The time frames for the alleged incidents also vary.

---

[3] As Defendants point out, the extensive nature of California's penal system also militates against any finding that notice of an incident in one particular place would put the CDCR system on notice of incidents occurring in other facilities. As Defendant points out, as of 2009 there were 4,300 female correctional officers assigned to 34 adult correctional institutions and 4 juvenile facilities statewide. See Def.'s Reply, 11:26-28.

In no sense, as in the EEOC v. NCL and Harris cases, are the claims virtually identical such that notice of one would in effect be notice of the others.  Under those circumstances, this Court finds that Plaintiff Currie cannot piggyback on the claims of either of her co-plaintiffs.

## CONCLUSION

Given the foregoing, the Court finds that Plaintiff Karen Currie did not exhaust her administrative remedies prior to instituting the present lawsuit.  Given that failure, Defendant CDCR is entitled to judgment on its behalf and Defendant's Motion for Summary Judgment as to Plaintiff Currie's Claim (ECF No. 66) is GRANTED.[4]
Having determined that summary judgment is appropriate on the exhaustion issue alone, the Court need not rule on the remainder of Defendant's arguments, as set forth in its Motion, and declines to do so.

IT IS SO ORDERED.

Dated:  October 31, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[4] Having determined that oral argument was not of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

8