UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

YVETTE DANIELS, MARIA AGUILAR
and KAREN CURRIE, individually and
on behalf of all persons similarly
situated,

    Plaintiffs,

  v.

CALIFORNIA DEPARTMENT OF
CORRECTIONS AND
REHABILITATION,

    Defendant.

No.  2:10-cv-00003-MCE-AC

**MEMORANDUM AND ORDER**

Through the present action, the three named plaintiffs in this matter allege they were subjected to a hostile work environment by their employer, Defendant California Department of Corrections and Rehabilitation ("CDCR").   Plaintiffs attribute that environment to the CDCR's alleged failure to properly enforce policies prohibiting the possession and display of sexual materials by inmates.  According to Plaintiffs, the CDCR's failure in that regard violates Title VII of the Civil Rights Act of 1964, 42 U.S.C.  § 2000e, et seq.  All three Plaintiffs assert claims for gender discrimination premised on the allegedly hostile work environment to which they claim to have been subjected.  That is the only claim being presented by Plaintiff Maria Aguilar.

1    The CDCR now moves for summary judgment as to Ms. Aguilar's complaint on

2    grounds that any exposure on her part to sexual materials was not sufficiently severe

3    and pervasive to constitute a hostile work environment.  Alternatively, the CDCR argues

4    that even if inmate possession and/or display of such materials did create the requisite

5    hostile environment for Ms. Aguilar, it cannot be liable in any event because it took

6    appropriate corrective actions to deter and cease both the possession of sexually explicit

7    materials and the display of sexually suggestive materials by inmates.  As set forth

8    below, the CDCR's motion is granted.

9

10                                    **BACKGROUND**

11

12    Plaintiff Maria Aguilar worked for the CDCR as a correctional officer assigned to

13    the California State Prison-Solano from April 1995 until she retired in 2011.  During the

14    period between 2008 and 2011, her specific assignment was as a housing officer

15    assigned to the Level 2 yard.   See Def.'s Statement of Undisputed Facts ("SUF") Nos.

16    1-3.

17    According to Plaintiff's deposition testimony, she had to take action on a number

18    of occasions in 2008 to enforce the CDCR's policy regarding the possession and display

19    of sexual materials by inmates.  Under Department policy, while possession of sexually

20    suggestive materials (like swimsuit and lingerie advertisements and photos) is not

21    prohibited, inmates nonetheless cannot openly display such materials.  Id. at Nos. 10,

22    11.  All material deemed sexually explicit as opposed to simply suggestive, on the other

23    hand (whether contained in photographs, magazines, or video), is deemed contraband

24    and is subject to confiscation by correctional officers.  Inmates who are found to possess

25    such material are also subject to discipline.  Id. at Nos. 4, 6.[1]

26    ///

---

[1] Although Plaintiff acknowledged receiving a copy of a 2005 memo pertaining to inmate possession and display of sexual materials (see id. at No. 15), she claimed at her deposition to be unaware of the distinction between sexually suggestive and sexually explicit materials.

2

1       As a correctional officer, Ms. Aguilar's practice was to initially ask inmates to

2 remove materials she considered offensive.  If an inmate failed to comply with her verbal

3 directive in that regard, she would issue a written disciplinary report, either in the form of

4 a 128 Counseling Report or a 115 Rules Violation Report.  Id. at No. 22.  The 128

5 Report is simply put in the inmates file, whereas the 115 Report may lead to progressive

6 discipline including an inmate's loss of privileges, denial of parole, or referral to the

7 District Attorney for prosecution.  Id. at Nos. 20-21.

8       At her deposition, Plaintiff denied any instance during 2007 where a verbal

9 warning with respect to displaying offending sexual material was not sufficient to resolve

10 the problem.  Id. at No. 27.  In 2008, Plaintiff was able to identify only six inmates who

11 openly displayed sexually suggestive materials so that a verbal instruction to cease that

12 display had to be issued.  Id. at No. 67.  Other than incidents involving two particular

13 inmates (Brown and Washington) Plaintiff could also recall no other instances where a

14 verbal warning was insufficient.  Id. at No. 68.  While Plaintiff did issue 115 Violation

15 Reports to both Brown and Washington, it is undisputed that neither inmate threatened

16 or verbally abused her thereafter.  Id. at Nos. 37, 45.

17       Aside from the aforementioned six incidents in 2008, Plaintiff was unable to

18 identify any subsequent incidents over the next three years (in either 2009, 2010 or

19 2011, until the time of her August 3, 2011 deposition) where an inmate failed to comply

20 with her instructions regarding the display of any sexual materials.  Id. at 70-72.

21       With respect to enforcement by CDCR management of its regulations and policies

22 concerning sexual material, Plaintiff Aguilar's deposition testimony also did not identify

23 any instance where she made a written report about an inmate's policy violation and

24 where that inmate was not disciplined.  Pl.'s Dep., 164:1-5.  Plaintiff concedes that she

25 was never ridiculed or demeaned by any of her supervisors for making reports about

26 inmate display of pornographic material.  SUF No. 78.  Nor did she ever confront or

27 report any other correctional officers for not following Department policy in that regard.

28 Id. at 82-83.

3

This lawsuit was originally instituted as a class action in 2010.  Once the class action allegations were dropped from this matter in 2011, its prosecution was left to the named Plaintiffs on their own behalf.  As indicated above, in now moving for summary judgment as to Plaintiff Aguilar's claims, Defendant maintains that it is entitled to judgment as a matter of law on grounds that Plaintiff has not demonstrated the severe and pervasive harassment needed in order to maintain a claim premised on hostile work environment.  Alternatively, Defendant goes on to argue that because Plaintiff has not produced any evidence that the Department failed to take appropriate remedial action with respect to inmate possession of sexual materials, it is entitled to summary judgment even if a pervasive atmosphere of sexual harassment was indeed present.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp., 477 U.S. at 325.

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

///

///

4

1     In attempting to establish the existence or non-existence of a genuine factual

2  dispute, the party must support its assertion by "citing to particular parts of materials in

3  the record, including depositions, documents, electronically stored information,

4  affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

5  not establish the absence or presence of a genuine dispute, or that an adverse party

6  cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The

7  opposing party must demonstrate that the fact in contention is material, i.e., a fact that

8  might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,

9  Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and

10  Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).

11     The opposing party must also demonstrate that the dispute about a material fact

12  "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict

13  for the nonmoving party."  Anderson, 477 U.S. at 248.  In other words, the judge needs

14  to answer the preliminary question before the evidence is left to the jury of "not whether

15  there is literally no evidence, but whether there is any upon which a jury could properly

16  proceed to find a verdict for the party producing it, upon whom the onus of proof is

17  imposed."  Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S.

18  442, 448 (1871)) (emphasis in original).  As the Supreme Court explained, "[w]hen the

19  moving party has carried its burden under Rule [56(a)], its opponent must do more than

20  simply show that there is some metaphysical doubt as to the material facts."

21  Matsushita, 475 U.S. at 586.  Therefore, "[w]here the record taken as a whole could not

22  lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

23  trial.'"  Id. at 587.

24     In resolving a summary judgment motion, the evidence of the opposing party is to

25  be believed, and all reasonable inferences that may be drawn from the facts placed

26  before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

27  255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

28  obligation to produce a factual predicate from which the inference may be drawn.

1 | Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

2 | 810 F.2d 898 (9th Cir. 1987).

3

4 | **ANALYSIS**

5

6 | Plaintiff, in asserting a Title VII claim under a hostile work environment theory ,

7 | must first establish he existence of a hostile work environment to which she was

8 | subjected.  Second, if she establishes that such an environment was indeed present,

9 | she must show that her employer, here the CDCR, was liable for permitting the

10 | harassment that caused the hostile environment to exist. Freitag v. Ayers, 468 F.3d 528,

11 | 539 (9th Cir. 2006) citing Little v. Windermere Relocation, Inc., 301 F.3d 958, 968 (9th

12 | Cir. 2002).

13 | Turning initially to the first requirement, in order to show a hostile work

14 | environment, Plaintiff Aguilar "must prove that (1) she was subjected to verbal or

15 | physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) this

16 | conduct was sufficiently severe or pervasive to alter the conditions of employment and

17 | create an abusive working environment."  Id.

18 | In the present matter, there can be little doubt that, to the extent sexually oriented

19 | images were openly displayed, that conduct was both sexual in nature and unwelcome

20 | as far as Plaintiff was concerned.  The salient issue, however, is whether that conduct

21 | was sufficiently "severe or pervasive" to create an abusive working environment for

22 | Ms. Aguilar.  In making that determination, the Ninth Circuit indicates that the totality of

23 | the circumstances must be considered, including whether the harassment was both

24 | objectively and subjectively abusive.  Id.

25 | ///

26 | ///

27 | ///

28 | ///

6

1    Only if Plaintiff succeeds in demonstrating the existence of a hostile work environment is

2    it necessary for the Court to address liability concerns.  Significantly, however, liability for

3    inmate sexual harassment depends not on the prisoners' conduct but instead on the

4    correctional facility's response to inmate behavior.  The CDCR is not liable if it has taken

5    corrective measures "reasonably calculated to end the harassment," with the issue of

6    reasonableness hinging on the promptness of the prison's response and its ability to

7    stop the harassment.  Id. at 539-540 (citing Ellison v. Brady, 924 F.2d 872, 882 (9th Cir.

8    1991)).

9         In addressing the severe and pervasive issue in this particular case, the Court

10   must look to the prison setting itself.  As the court in Slayton v. Ohio Dept. of Youth

11   Servs., 206 F.3d 669 (6th Cir. 2000), stated:

12              "Prisoners, by definition, have breached prevailing societal
              norms in fundamentally corrosive ways.  By choosing to work
13            in a prison, corrections personnel have acknowledged and
              accepted the probability that they will face inappropriate and
14            socially deviant behavior."

15   Id. at 669.

16        While Slayton went on to recognize that this general rule against liability for

17   inmate conduct "does not apply when the institution fails to take appropriate steps to

18   remedy or prevent illegal inmate behavior" (id.), making the focus for purposes of

19   assessing responsibility not on the inmates but instead on how the correctional

20   institution responds to unacceptable conduct, the fact remains that whether or not a

21   sexually charged atmosphere created by inmate behavior is sufficiently severe and

22   pervasive must necessarily be viewed in the context of a prison environment itself.  It

23   would appear axiomatic that what amounts to severe and pervasive misconduct in a

24   correctional setting is wholly different than what would be reasonably expected within the

25   confines of, for example, a law office.

26   ///

27   ///

28   ///

1   See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (in order to

2   assess whether hostile work environments exists, court must devote "careful

3   consideration of the social context in which particular behavior occurs and is

4   experienced by its target…").

5        In the instant matter, we have a situation where it is undisputed that prison

6   regulations allow inmates to possess some sexually suggestive materials, so long as

7   those materials are not openly displayed.  Plaintiff was working in an all-male prison

8   where, given those regulations, some exposure on her part to sexually oriented images

9   had to have been expected.  With just two exceptions in 2008, Plaintiff was able to

10  regulate inmate behavior through the use of verbal warnings.  There is no evidence that

11  the written reprimands she issued as a result of those two incidents were disregarded or

12  ignored by her superiors.  Significantly, too, at her deposition Plaintiff could identify no

13  instances in 2009, 2010 or 2011, where she had to resort to anything beyond verbal

14  warnings to control inmate display of sexual materials.

15       Cases where the requisite hostile work environment has been recognized are

16  instructive.  In Freitag, for example, inmate masturbation in the presence of the female

17  plaintiff was deemed severe and pervasive when it occurred multiple times over a period

18  of almost a year, and where independent investigation report revealed that prison

19  inmates "regularly subjected female correctional officers to lewd exhibitionism and

20  exhibitionist masturbation."  See Freitag, 468 F.3d at 535.

21       While the Freitag court also recognized that a single incident of severe abuse can

22  constitute a hostile work environment (see id. at 540 (citing Little v. Windermere

23  Relocation, Inc., 301 F.3d 958, 968 (9th Cir. 2002)), this Court finds that displaying a

24  sexually suggestive photograph does not fall within that kind of egregious category.

25  Instead, what we have here are a group of incidents involving the display and/or

26  possession of sexual materials that occurred almost exclusively within a relatively

27  discrete period between February and October of 2008.

28  ///

1  In only two of those incidents identified by Plaintiff as happening in 2008 was it even

2  necessary for her to resort to a written reprimand in order to regulate the materials.

3  Significantly, too, as indicated above, Plaintiff Aguilar denied having to issue written

4  warnings as to the display of sexual images either the year beforehand (2007), or during

5  the three years afterwards, up until the time Plaintiff's deposition was taken in August of

6  2011.

7        It must also be emphasized that the incidents at issue, where either a verbal

8  warning or written reprimand were necessary, all occurred in an all-male prison where

9  inmates were, by regulation, specifically permitted to possess sexually suggestive

10 photos, magazines, and the like, as long as they did not openly display those items.  At

11 the same time, however, inmates could not possess sexually explicit items, which were

12 considered contraband.   Given those distinctions, Plaintiff as a correctional officer had

13 to expect that some monitoring of the sexual materials possessed and/or displayed by

14 inmates would be necessary.  Under those circumstances, this Court cannot conclude

15 on the basis of the evidence proffered by Plaintiff that any harassment she encountered

16 was severe and pervasive enough to trigger potential liability.  Summary judgment as to

17 Plaintiff Aguilar's sole claim in this lawsuit, for gender discrimination caused by a hostile

18 work environment, is therefore appropriate on that ground alone.

19       Even if she were able to overcome the initial hurdle of a severe and pervasive

20 hostile environment, Plaintiff would fare not better.   As indicated above the CDCR is

21 liable for harassing conduct by inmates where it "either ratifies or acquiesces in the

22 harassment by not taking immediate and/or corrective action when it knew of should

23 have known of the conduct."  Freitag, 468 F.3d at 538 (citing Folkerson v. Circus Circus

24 Enters., Inc., 107 F.3d 754, 756 (9th Cir. 1997)).  Liability is therefore "grounded not on

25 the harassing act itself-- i.e., inmate misconduct-- but rather on [CDCR's]  'negligence

26 and ratification' of the harassment through its failure to take appropriate and reasonable

27 responsive action. " Freitag, 468 F.3d at 538 (citing Galdamez v. Potter, 415 F.3d 1015,

28 1022 (9th Cir. 2005)).

1    Here, it is undisputed that the CDCR has regulations and policies which:  1)

2    classify sexually explicit materials as contraband, subject to confiscation and potential

3    imposition of discipline; and 2) prohibit the open display of sexually suggestive materials.

4    SUF 4-11.  It is equally uncontroverted that correctional officers have the discretion to

5    determine what constitutes contraband or suggestive materials, and which method of

6    discipline should be imposed-- from verbal counseling, preparation of an informal 128

7    report, or submission of a more formal 115 report with the potential for harsher discipline.

8    SUF Nos. 12-24.  As already stated above, Plaintiff testified that in all but two of the

9    instances she identified, verbal counseling alone was sufficient to rectify the violation.

10   Where Plaintiff did find it necessary to write an inmate up for violating the CDCR's sexual

11   materials policy, she admitted that the Department took the complaints seriously and

12   disciplined the inmates.  SUF No. 73-74.[2]   She admitted that written reports she issued

13   were neither ignored, dropped or removed.  Id. at No. 75. Plaintiff did not feel her

14   complaints in this regard were ignored, she was not ridiculed or demeaned by any of her

15   supervisors for making complaints, and she professed to being unaware of anyone at

16   the Department who ignored rules with respect to the display of sexual materials. Id. at

17   Nos. 75, 77-78.

18        The circumstances delineated above stand in stark contrast to cases where

19   liability was imposed for failure to take appropriate corrective action.

20   ///

21   ///

22   ///

23   _____

24   [2] While Plaintiff does nominally take issue with the CDCR's contention that it disciplined inmates who were written up by Plaintiff, the only supporting documentation she provides relates to an incident that occurred

25   in September 2011, after Plaintiff testified she had been free of any hostile environment caused by inmates' possession and display of sexual materials in 2009, 2010 and 2011, right up to the time of her

26   deposition on August 3, 2011.  Significantly, too, not only was the 2011 incident temporally separate from the other incidents Plaintiff identified, but all her declaration says about the 2011 incident is that the reviewing lieutenant disagreed that the inmate in question had been "disrespectful to staff" in refusing to

27   refusing to acknowledge a memorandum shown to him by Plaintiff.  Aguilar, Decl., ¶¶ 19-20.  That attenuated incident is not sufficiently probative to overcome summary judgment.

28

1   In <u>Slayton</u>, for example, the plaintiff complained more than twenty times to her fellow

2   correctional officer about that officer's activities in inciting offensive sexual behavior by

3   inmates, to no avail.  Then, Plaintiff testified she complained to at least three

4   supervisors, also without avail, before she was terminated.  <u>Slayton</u>, 206 F.3d at 674-

5   675.  Moreover, in <u>Freitag</u>, when the plaintiff in that case reported inmate exhibitionist

6   masturbation, she claimed  her complaints in that regard were either summarily denied

7   or discarded.  <u>See</u> <u>Freitag</u>, 468 F.3d at 533.  In the present instance, Plaintiff has not

8   presented any evidence, as she must, suggesting that the CDCR failed to take

9   appropriate and reasonable action in response to her complaints [3]

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ───────────────
[3] Although Plaintiff's declaration states that in one instance she was "upset" that one of her supervisors,
27  Sergeant Bradley, failed to take action the same day as she reported an incident involving inmate Brown,
the evidence indicates that Brown was in fact disciplined and the brief delay complained of by Plaintiff is
28  again not enough to avoid summary judgment.

1

**CONCLUSION**

2

3       Given the foregoing, the Court finds that Plaintiff Maria Aguilar has not

4   established the requisite hostile work environment necessary in order to maintain her

5   single claim for gender discrimination in this matter.  Defendant CDCR is therefore

6   entitled to judgment as a matter of law on that basis, and Defendant's Motion for

7   Summary Judgment (ECF No. 67) is accordingly GRANTED.[4]  In addition, even if

8   Plaintiff were able to demonstrate a hostile work environment, which this Court

9   concludes she has not, Plaintiff still has not come forth with a viable claim because she

10  has not shown that Defendant's response to the alleged hostile environment caused by

11  the inmates was inappropriate or unsatisfactory.  Defendant CDCR is entitled to

12  summary judgment on that ground as well, since a correctional institution like that

13  maintained by CDCR is only liable for inmate misconduct if its efforts to curb that

14  misconduct are unavailing.[5]

15      IT IS SO ORDERED.

16  Dated:  November 20, 2013

17

18

19  _____
    MORRISON C. ENGLAND, JR., CHIEF JUDGE

20  UNITED STATES DISTRICT COURT

21

22

23

24  _____

[4] Having determined that oral argument was not of material assistance, the Court ordered this matter
25  submitted on the briefs.  E.D. Cal. Local Rule 230(g).

26  [5] While the Court notes that Plaintiff's counsel has also requested that she be permitted to reopen
    discovery in order to take a number of depositions and to conduct a site inspection that she believes could
27  assist her in opposing this Motion, Plaintiff's Motion to Modify the Pretrial Scheduling Order to permit such
    discovery has already been denied by the Court by Memorandum and Order filed October 11, 2013 (ECF
    No. 94), and consequently need not be further addressed herein.

28